IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LANI M. QUINTANA,[1]

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

No. 2:09-cv-01056 KJN

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), and her protectively filed application for Supplemental Security Income ("SSI") under Title XVI of the Act.[2] (Dkt. No. 24.) In her motion for summary judgment, plaintiff contends that the Administrative Law Judge ("ALJ") erred by: (1) not finding that plaintiff's diagnosed condition of ciliary neuralgia, which may be

---

[1] Ms. Quintana has also gone by the name "Lani M. DeLuze," and is referred to as such in some portions of the record.

[2] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 9, 11.) This case was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 18.)

1

used to refer to the occurrence of "cluster headaches," was a "severe" impairment at step two of the applicable five-step analysis; (2) improperly rejecting the opinion of one of plaintiff's treating physicians, Dr. Shalini Gupta, regarding the disabling nature of plaintiff's ciliary neuralgia, and otherwise failing to develop the record in this regard; (3) failing to credit plaintiff's testimony regarding the disabling nature of her impairments; (4) rejecting the statements of a lay witness, plaintiff's boyfriend, without providing reasons for doing so; (5) failing to credit the testimony of a vocational expert who testified regarding plaintiff's ability to work in response to plaintiff's counsel's hypothetical questions; and (6) relying on the vocational expert's improper testimony regarding available jobs in the economy. The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 28.)

For the reasons stated below, the court will grant plaintiff's motion for summary judgment in part, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings.

I.   BACKGROUND[3]

Plaintiff was 44 years old at the time of the ALJ's decision denying DIB and SSI benefits and she has a high school level education. (Administrative Transcript ("AT") 17.) She previously worked: at a food store or market operating a pasta machine; as a receptionist; an office manager; a mobile home park assistant manager; and a telemarketer. (See AT 16, 46, 80-81.) In February of 2005, plaintiff visited an emergency room and reported that approximately two weeks prior she had felt her nose "pop" while she was manipulating pasta dough at work. (AT 46, 229.) She reported severe pain, dizziness, and anxiety. Over the following years, plaintiff visited health care providers frequently with respect to her physical conditions including ciliary neuralgia, and mental conditions including depression and bipolar disorder.

---

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

A.     Procedural Background

Plaintiff filed an application for DIB, with a protective application for SSI benefits, alleging a disability onset date of February 10, 2005. (AT 25-30.) The Social Security Administration denied plaintiff's applications initially and upon reconsideration. (AT 90-99, 103-09.) Plaintiff filed a request for a hearing, and the ALJ conducted a hearing regarding plaintiff's claims on September 28, 2008. (AT 40-90, 110.) Plaintiff, who was represented by counsel at the hearing, testified at the hearing. A vocational expert also testified at the hearing. Plaintiff's boyfriend, Emery Young, also provided a third party witness statements regarding plaintiff's functional limitations. (AT 137-43.)

In a decision dated December 12, 2008, the ALJ denied plaintiff's application. (AT 10-18.) He determined that plaintiff could perform her past work as a machine operator and that, alternatively, plaintiff could perform jobs that exist in significant numbers in the national economy.[4] (AT 16-18.) The ALJ's decision became the final decision of the Commissioner

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step

3

when the Appeals Council denied plaintiff's request for review.  (AT 1-3.)  Plaintiff subsequently filed this action.

>   B.   Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since February 10, 2005, the alleged date of onset.  (AT 12.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments: depression, anxiety, and a pain disorder.  (AT 13.)  The ALJ stated the following: "The claimant reported that she has daily facial pain which prevents her from doing activities and is exacerbated by lifting and bending.  She also noted that she has become progressively sad, depressed, discouraged and anxious concerning her future."  (AT 13.)  The ALJ did not expressly resolve whether plaintiff's diagnosed condition of ciliary neuralgia was "severe" within the meaning of the Act.  At step three, he determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations.  (AT 13.)

The ALJ further determined that prior plaintiff had the residual functional capacity ("RFC") to perform work at "all exertional levels" and "is able to perform simple tasks that involve limited public contact."  (AT 13.)  In arriving at this RFC, the ALJ considered, but did not adopt, the medical opinion of plaintiff's treating physician, Dr. Gupta, who had opined that plaintiff's diagnosed condition of ciliary neuralgia was disabling to plaintiff.  (See AT 15-16,

---

> five.
>   Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1   336.)  The ALJ also found that plaintiff was not a credible witness, stating that plaintiff's
2   "statements concerning the intensity, persistence and limiting effects of these symptoms are not
3   credible to the extent that they are inconsistent with the above residual functional capacity
4   assessment."  (AT 15.)
5            At step four, the ALJ found that, considering plaintiff's RFC and testimony of the
6   vocational expert, plaintiff was capable of performing past relevant work as a machine operator
7   "as she performed it and as it is generally performed in the national economy."  (AT 16.)  As an
8   alternative finding, the ALJ concluded at step five that "there are jobs that exist in significant
9   numbers in the national economy that [plaintiff] can perform."  (AT 17.)  Accordingly, the ALJ
10  found that plaintiff was not disabled.

11  II.   STANDARDS OF REVIEW

12           The court reviews the Commissioner's decision to determine whether it is (1) free
13  of legal error, and (2) supported substantial evidence in the record as a whole.  Bruce v. Astrue,
14  557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir.
15  2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r
16  of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than
17  a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind
18  might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554
19  F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
20  1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs.,
21  846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining credibility,
22  resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews, 53 F.3d at
23  1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the
24  final arbiter with respect to resolving ambiguities in the medical evidence.").  Findings of fact
25  that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy
26  v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support

either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

IV. ANALYSIS

As noted above, plaintiff alleges that the ALJ erred by: (1) not considering plaintiff's diagnosed condition of ciliary neuralgia to be a "severe" impairment at step two of the analysis; (2) rejecting the opinion of Dr. Gupta regarding the disabling nature of plaintiff's ciliary neuralgia and otherwise failing to develop the record in this regard; (3) discrediting plaintiff's testimony without providing clear and convincing reasons for doing so; (4) rejecting the statements of plaintiff's boyfriend without providing reasons for doing so; (5) failing to credit the vocational expert's response to hypothetical questions posed by plaintiff's counsel; and (6) relying on the vocational expert's improper testimony regarding available jobs. Some of plaintiff's claims of error are well-taken and necessarily warrant a remand for further proceedings.

A. The ALJ Erroneously Rejected Lay Witness Evidence

As an initial matter, the undersigned concludes that the ALJ committed legal error by silently rejecting the lay witness statements submitted by plaintiff's boyfriend, Emery Young, regarding plaintiff's functional limitations. This error, by itself, warrants a remand to the agency for further proceedings.

In assessing whether a claimant is disabled, an ALJ "must" consider lay witness testimony regarding the claimant's ability to work. Bruce, 557 F.3d at 1115 (citing Stout v.

1  Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006), and 20 C.F. R. §§ 404.1513(d)(4), (e)).  Such
2  testimony "*cannot* be disregarded without comment."  Id. (citation omitted).  "When an ALJ
3  discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each
4  witness.'"  Valentine, 574 F.3d at 694 (modification in original) (quoting Dodrill v. Shalala, 12
5  F.3d 915, 919 (9th Cir. 1993)).  "[T]he reasons 'germane to each witness' must be specific."
6  Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054).

7         Here, plaintiff's boyfriend provided a third party "Function Report" on a ten-page
8  form.  (AT 137-43.)  Among other things, he reported that plaintiff: can only sleep for a couple
9  of hours at a time, would wake up in pain, tries to do chores but can only do a little at a time, is
10 dizzy most of the time, sometimes requires assistance bathing, has trouble bending down, can
11 feed herself, but is often in pain, sometimes needs assistance in the bathroom, needs help
12 shopping for groceries, will not go for walks due to her dizziness, and only drives for doctor's
13 appointments.  He also checked boxes on the form indicating that plaintiff had trouble lifting,
14 squatting, bending, standing, reaching, walking, kneeling, and completing tasks.  He reported that
15 plaintiff does not struggle with tasks such as following written and spoken instructions, gets
16 along with authority figures, and prepares simple meals twice a day.

17        The ALJ identified Mr. Young's report in his decision and related several of the
18 limitations reported by Mr. Young therein.  (AT 15.)  However, the ALJ did not expressly accept
19 or reject Mr. Young's statements of plaintiff's limitations.  Indeed, the ALJ offered no comment
20 or characterization of Mr. Young's report.  Although it appears from the ALJ's ultimate disability
21 determination that he necessarily rejected Mr. Young's report, the ALJ erred by not providing
22 specific reasons for such rejection, let alone specific reasons germane to Mr. Young.

23        The Commissioner argues that the ALJ properly rejected Mr. Young's report
24 because the ALJ addressed Mr. Young's statements and plaintiff's subjective complaints
25 together.  He argues that, as a result, the ALJ provided reasons for rejecting Mr. Young's
26 statements that were germane to Mr. Young.  The Commissioner's conclusory argument is not

supported by the text of the ALJ's decision. Immediately after identifying the report submitted by Mr. Young, the ALJ discussed why *plaintiff's* "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (AT 15 (referring to "her statements").) This paragraph makes no mention of Mr. Young's statements. In the subsequent paragraph explaining the reasons for the adverse credibility finding, the ALJ only addresses *plaintiff's* subjective complaints and does not include any statement to the effect that he rejected Mr. Young's statements for the same reasons. Thus, the ALJ did not provide specific reasons for rejecting Mr. Young's statements that were germane to Mr. Young.

The ALJ might have had a proper basis for rejecting the evidence provided by Mr. Young. However, the ALJ's consideration and rejection of that evidence was erroneous under the applicable legal standards, and the Commissioner's arguments to the contrary lack merit. Accordingly, the undersigned will remand this matter so that the ALJ can adequately address the evidence provided by Mr. Young.

   B.   <u>The ALJ Erred at Step Two By Finding that Plaintiff's Ciliary Neuralgia Was Not a "Severe" Impairment</u>

Despite determining that remand is warranted as a result of the ALJ's erroneous rejection of lay witness evidence, the undersigned will also address plaintiff's primary complaint, that the ALJ erred by not including ciliary neuralgia or cluster headaches as a "severe" impairment at step two of the five-step analysis. Plaintiff argues that the ALJ "seriously circumscribed" her claim by not including ciliary neuralgia as a severe impairment at step two, because if ciliary neuralgia were found to be a severe impairment the ALJ would have had to consider it throughout the remainder of the sequential analysis. The undersigned concludes that the ALJ erred at step two and will remand this case for further consideration of whether plaintiff's condition of ciliary neuralgia is a severe impairment at step two.

At step two of the sequential evaluation, the ALJ determines whether the claimant

has a medically "severe" impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(a)(4)(ii); accord 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 140-41 (1987)). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c), 404.1521(a); accord 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[5]

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290. The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account." Bowen, 482 U.S. at 153. "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted). If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523.

Plaintiff contends that she was diagnosed with ciliary neuralgia, which is synonymous with a diagnosis of cluster headache syndrome, i.e., that the two terms are interchangeable. A preliminary discussion of the diagnosis referred to as ciliary neuralgia may be helpful. This condition has been defined in different ways. For example, "ciliary neuralgia"

---

[5] The regulations provides examples of such abilities and aptitudes, and include : "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521.

9

refers to "[p]ain in the eye, brow, and/or temple caused by neuralgia . . . of the ciliary nerves (nerves of the iris and ciliary muscles of the eyeball)." 1-C Attorneys' Dictionary of Medicine C-25111 (Matthew Bender 2009). However, the term "ciliary neuralgia" has also been used as a synonym for a diagnosis of "cluster headache." See, e.g., 1 Int'l Classification of Diseases, 9th Rev., Table of Diseases and Injuries § 339 (6th Ed. May 2010 database) (listing "Ciliary neuralgia" under a heading of "Cluster headache syndrome, unspecified"). Plaintiff's arguments at step two focus on the fact that the term ciliary neuralgia can be used as a synonym for cluster headaches.[6]

A cluster headache is "[a] severe headache affecting one side of the head and face, usually accompanied by tearing of the eye on the affected side and watery discharge from the nose. Headache is recurrent, with attacks occurring in groups." 1-C Attorneys' Dictionary of Medicine C-26232 (Matthew Bender 2009); accord Mark H. Beers, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 1845 (Merck Research Labs., 18th ed. 2006) (hereinafter "Merck Manual"); see also Cameron v. Bowen, No. C 85-3081 THE, 1986 WL 32331, at *3 (N.D. Cal. Feb. 28, 1986) (unpublished) ("Medical authority suggests that the diagnosis of cluster headaches may itself be prima facie evidence that plaintiff's head pain was quite severe--in fact, so severe that no medication has been recognized to be effective either in preventing them or in relieving their pain."). Diagnosis of a cluster headache is clinical and is "based on the distinctive symptom pattern and exclusion of intracranial pathology." Merck Manual at 1845.

As plaintiff notes in her brief, the record is replete with references to ciliary neuralgia. Plaintiff was diagnosed with ciliary neuralgia by at least two different treating physicians at the Del Norte Clinics and was prescribed several different medications to treat the resulting symptoms. First, Dr. Aliya Akbar specifically noted a diagnosis of ciliary neuralgia following visits with plaintiff on January 24, 2006 (AT 248); July 6, 2006 (AT 236); November

---

[6] The Commissioner does not contest plaintiff's assertion that diagnoses of ciliary neuralgia and cluster headache can be synonymous.

20, 2006 (AT 289); February 15, 2007 (AT 287); April 10, 2007 (AT 283); June 5, 2007 (AT 281); August 2, 2007 (AT 317); and July 3, 2007 (AT 318).[7] Dr. Shalini Gupta noted a diagnosis of ciliary neuralgia following visits with plaintiff on February 4, 2008 (AT 316); February 14, 2008 (AT 315); February 22, 2008 (AT 314); and March 18, 2008 (AT 312). Aside from noting plaintiff's pain and the occurrence of headaches, the treatment notes from those appointments do not identify specific functional limitations related to plaintiff's ability to perform basic work activities that were caused by ciliary neuralgia. Additionally, none of those physicians specifically diagnosed a "cluster headache"; all references are to ciliary neuralgia. However, on September 18, 2008, Dr. Gupta wrote a letter "To Whom It May Concern," which states:

> This is to certify that Lani Deluze [*sic*] has ciliary neuralgia on the left side, which results in intermittent pain around her face in the eye and cheek area, which is usually precipitated by lifting, bending, etc. This also causes headaches and blurred vision and is disabling to the patient.

(AT 336.)

Plaintiff's diagnosis of ciliary neuralgia probably would meet the de minimis threshold at step two and constitute a severe impairment on the basis of Dr. Gupta's letter and the nearly two years of treatment notes documenting this condition.[8] This evidence demonstrates more than a slight abnormality that would have a significant effect on plaintiff's ability to perform basic work activities. However, the ALJ did not find as much in his terse discussion at

---

[7] Dr. Akbar noted a diagnosis of "neuralgia" on January 16, 2007. (AT 288.) Although it is unclear whether it constitutes the same diagnosis as ciliary neuralgia, Dr. Jagdeep Bal of the Del Norte Clinics also diagnosed plaintiff with "Neuralgia" on February 27, 2006, and "NEURALGIA WITH HISTORY OF INJURY TO THE NOSE" on March 24, 2006. (AT 245, 248.)

[8] At the hearing before the ALJ, plaintiff also testified repeatedly about her condition of ciliary neuralgia. (AT 53, 60, 66-69, 74-75.) In addition to testifying to resulting nerve pain and dizziness, plaintiff testified that her ciliary neuralgia led to daily headaches that lasted roughly six hours and caused pain that was as bad as the pain in plaintiff's nose. (AT 66-69.) The ALJ found plaintiff to be not credible in formulating plaintiff's RFC. The undersigned does not address the ALJ's adverse credibility determination in this order.

step two. Indeed, the ALJ did not discuss any of this evidence in his analysis at step two. (See AT 13.) The ALJ only stated the following: "The claimant reported that she has daily facial pain which prevents her from doing activities and is exacerbated by lifting and bending. She also noted that she has become progressively sad, depressed, discouraged and anxious concerning her future." (AT 13.)

The ALJ did, however, subsequently address Dr. Gupta's September 18, 2008 letter while assessing plaintiff's RFC. Although not clear from the ALJ's decision, it appears that the ALJ might have omitted ciliary neuralgia at step two because he subsequently gave "minimal weight" to Dr. Gupta's opinion regarding the disabling nature of ciliary neuralgia as to plaintiff. The ALJ rejected Dr. Gupta's opinion on the grounds that it "is not supported by objective findings, but rather draws inferences from the claimant's history and subjective complaints."[9] (AT 16.) The ALJ's decision is by no means a model of clarity, and the Commissioner's brief offers little help in assessing the ALJ's decision. Nevertheless, it appears that the appropriateness of the ALJ's omission of ciliary neuralgia as a severe impairment at step two rises or falls with his rejection of Dr. Gupta's treating physician opinion, and the undersigned will address the propriety of that rejection.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

---

[9] During the hearing, the ALJ also expressed skepticism regarding Dr. Gupta's opinion due to the lack of "diagnostic studies." (AT 78.)

12

treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, none of the consultative reports in the record, which appear to have been completed only by psychiatrists, contradicts Dr. Gupta's statement regarding the functional limitations caused by plaintiff's ciliary neuralgia.[10]  (See AT 256-77.)  Accordingly, the ALJ was required to state clear and convincing reasons for rejecting that opinion.  He did not do so. Even assuming the presence of a contradictory opinion, which would require the ALJ to provide specific and legitimate reasons for rejecting Dr. Gupta's opinion, the ALJ did not properly reject Dr. Gupta's opinion.

The ALJ's written decision and remarks at the hearing reveal that he rejected Dr. Gupta's opinion for two related reasons.  First, the ALJ rejected Dr. Gupta's opinion because it was based on plaintiff's subjective complaints.  Second, and relatedly, the ALJ discounted Dr. Gupta's opinion because it was not supported by objective findings or diagnostic studies.

Ordinarily, these reasons could adequately support the rejection of a treating physician's opinion.  See e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that ALJ did not err by rejecting a physician opinion where it was unsupported by objective medical findings and treating notes, and where the physician relied only on the plaintiff's complaints that were found to be not credible).  However, a diagnosis of ciliary

---

[10] Although the Commissioner intimates in his cross-motion that Dr. Gupta's opinion is controverted, he cites to no other medical opinion or other evidence in the record that supports this suggestion.

1 neuralgia, as synonymous with cluster headaches, presents a peculiar case.  First, a diagnosis of
2 cluster headaches is made on a clinical basis.  See Merck Manual at 1845, i.e., on the basis of
3 signs and symptoms reported by the patient; see also Stedman's Med. Dictionary 531 (Lippincott
4 Williams & Wilkins, eds., 28th ed. 2006) (defining the term "clinical diagnosis" as "a [diagnosis]
5 made from a study of the signs and symptoms of a disease").  Moreover, there does not appear to
6 be an objective test designed to diagnosis ciliary neuralgia.  Thus, the ALJ rejected Dr. Gupta's
7 opinion on grounds that constitute the very manner in which cluster headaches are diagnosed.

8        Without more, the undersigned concludes that the ALJ provided neither clear and
9 convincing reasons nor specific and legitimate reasons for rejecting Dr. Gupta's opinion
10 regarding ciliary neuralgia insofar as it refers to cluster headaches.  As a result, the ALJ's basis
11 for not including ciliary neuralgia as a severe impairment at step two of the sequential analysis is
12 not adequately supported.  Accordingly, the undersigned will remand this matter to the agency
13 for further proceedings.  On remand, the agency should reassess plaintiff's impairments at step
14 two of the analysis, and specifically whether or not the record supports a conclusion that plaintiff
15 had a severe impairment in the form of ciliary neuralgia as that term may relate to a diagnosis of
16 cluster headaches.  This remand does not preclude the ALJ from reassessing the existing record
17 and Dr. Gupta's opinion, and/or further developing the record regarding the diagnosis of ciliary
18 neuralgia/cluster headaches and the functional limitations resulting from these conditions insofar
19 as the remainder of the disability determination, including assessment of plaintiff's RFC, is
20 concerned.

21        Finally, plaintiff claims that the ALJ committed several other errors.  However,
22 the undersigned does not address those alleged errors in this order because the nature of the
23 remand ordered herein is of a sort that will likely impact the ALJ's sequential analysis from step
24 two through step five.  Moreover, because the remaining claims of error derive, at least in part,
25 from the errors addressed above, the undersigned need not address those alleged errors here.
26 ////

V. <u>CONCLUSION</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is granted in part.

2. The Commissioner's cross-motion for summary judgment is denied.

3. This matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

DATED: August 25, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE